IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIPLE A MACHINE SHOP INC., | No. C 07-02371 CRB |
| Plaintiff, | **ORDER** |
| v. | |
| THOMAS G. OLSEN, | |
| Defendant. / | |

This case arises from a certification of facts filed by Administrative Law Judge ("ALJ") Paul Mapes pursuant to 33 U.S.C. § 927(b), setting forth evidence justifying sanctions against the defendant, Thomas Olsen. On January 9, 2008, the Court held a hearing to evaluate Olsen's competence, and to "hear the evidence as to the acts complained of" and determine an appropriate sanction, if any. 33 U.S.C. § 927(b). The Court finds that Olsen is competent and that appointment of a guardian ad litem is unnecessary. The Court also finds that Olsen has failed to present any evidence calling into doubt the facts certified by Judge Mapes, and orders that the Department of Labor issue the compensation payments that Olsen currently receives directly to the Department of Treasury until further notice and as set forth below.

**BACKGROUND**

The factual background underlying this case is amply laid out in Judge Mapes' certification of facts. See Certification of Facts (hereinafter "Certification"). In sum, Olsen filed a claim for injuries allegedly suffered while working for Triple A under the Longshore and Harbor Workers' Compensation Act in 1978 (hereinafter "LHWCA"). Id. at 2. In 1982, Olsen was awarded permanent disability benefits, but in the late 1990s, Triple A obtained information suggesting that Olsen was not in fact totally disabled and that he had been profitably operating various businesses. See id. Accordingly, in 1999, Triple A filed a request seeking to have Olsen's payments reduced or terminated pursuant to 33 U.S.C. § 922, which permits a modification of disability benefits "on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner."

Almost immediately after Triple A requested a modification in the award, Olsen began engaging in a series of acts that the ALJ concluded were "plainly intended to prevent or at least delay Triple A's efforts to exercise its statutory right to have a hearing on its claim." Certification at 3. This conduct included, inter alia: (1) falsely alleging that Triple A's counsel had privileged discussions with Olsen about possible representation, in an attempt to disqualify the attorney; (2) attempting to force the recusal of the ALJ by filing a civil complaint against the judge; (3) attempting to intimidate the ALJ by threatening to cause the judge "various types of harm"; (4) making false allegations about statements made by a retired ALJ in Olsen's favor; (5) making false allegations about statements made by a physician, in an effort to bolster the merits of his case; (6) altering, without authorization or notification, forms drafted on Department of Labor letterhead that would have released necessary medical records belonging to Olsen; (7) failing to submit telephone records in response to the ALJ's order; (8) failing to identify the physician who allegedly diagnosed Olsen as having cancer; (9) failing to promptly report discharge from a hospital; (10) repeatedly filing frivolous complaints and appeals for the purpose of delay; (11) making allegations about opposing counsel's ethical integrity and abuse of substances; (12) and threatening witnesses. See id. at 3-11.

Judge Mapes attempted to impose sanctions on Olsen by requiring that he obtain a lawyer before proceeding and by suspending Olsen's disability benefits until a trial on the proposed modification could be held, but the Department of Labor's Benefits Review Board held that because § 927(b) provides a mechanism for punishing disruptive conduct, ALJs do not have the authority to impose other or additional sanctions on litigants and must instead refer all sanctionable conduct to federal district courts. See id. at Attachment 7. Accordingly, Judge Mapes certified the underlying facts to this Court in order to obtain appropriate sanctions.

The Certification was filed in this Court on January 3, 2007. On May 1, 2007, Triple A filed a complaint for sanctions, which incorporated the Certification as an exhibit. Olsen filed a motion to dismiss, or in the alternative for summary judgment, which was denied by this Court by order dated December 11, 2007. Olsen also moved for a competency hearing, requesting that these proceedings be stayed "until such time as I become medically able to rationally and intelligently, knowingly, and timely address the order(s) of the court." The Court granted that motion and heard evidence on both the issue of Olsen's competence and Judge Mapes' certification at a hearing on January 9, 2008.

## STANDARD OF REVIEW

It remains unsettled within this circuit what standard of review to apply to an ALJ's certification of facts. The Court finds guidance in cases interpreting now-outdated language in the Federal Magistrates Act, see 28 U.S.C. § 636(e) (1992), which mirrored the text of § 927(b). For example, in Proctor v. State Government of North Carolina, 830 F.2d 514 (4th Cir. 1987), the Fourth Circuit concluded that where a district court is directed to receive a certification of facts and "thereupon, in a summary manner, hear the evidence as to the acts complained of," the certificate of facts shall be considered the statement of a prima facie case. Id. at 521. Thus, if there is no other evidence appearing before the district court and the certified facts, if true, would support a violation, then the district court may, if it deems the burden of persuasion to have been satisfied, find a party in contempt. Id. at 521-22. However, the Court must allow either party the opportunity to introduce evidence upon

1  request and, in the event such evidence is taken, "the Court should proceed to consider that
2  evidence together with the facts previously certified . . . in determining whether a finding of
3  contempt can be sustained." Id. at 522. Proctor sets forth a reasonable interpretation of the
4  role of a district court in adjudicating a certificate of facts. Accordingly, the Court has
5  invited the parties to introduce evidence regarding the underlying conduct and will consider
6  that evidence – in conjunction with the facts certified by Judge Mapes – in determining
7  whether to impose a sanction against Olsen.

## DISCUSSION

### I. Competency

Rule 17(c)(2) of the Federal Rules of Civil Procedure provides that "[t]he court must appoint a guardian ad litem–or issue another appropriate order–to protect a minor or incompetent person who is unrepresented in an action." The Court has "broad discretion" and need not appoint a guardian ad litem if it determines the person is or can be otherwise adequately protected. United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat County, State of Wash., 795 F.2d 796, 805 (9th Cir. 1986).

As Olsen acknowledged at the hearing, he is mentally competent and fully capable of representing himself in these proceedings. Olsen currently resides in the hospital and requires medical attention for physical ailments. But any hurdles imposed by Olsen's physical condition can be overcome by the Court as they arise. Indeed, the Court permitted Olsen to attend the competency motion by telephone so that he could remain under medical attention. However, no evidence was adduced at the hearing that would justify appointment of a guardian ad litem.

### II. Sanctions

The Court held a hearing on the evidence set forth in the § 927 certification and invited the parties to introduce evidence contrary to that certified by Judge Mapes. Olsen made a statement but offered no evidence calling the certification into doubt. Indeed, at one point, Olsen acknowledged that he had made "mistakes." Accordingly, the Court finds that

Judge Mapes' certification accurately set forth the series of events that resulted in this proceeding and finds that a sanction is appropriate.[1]

The next step for the Court is to determine a suitable sanction. The purpose of the sanction to be imposed is to coerce the defendant into complying with the ALJ and participating, in good faith, in the § 922 proceeding to modify or terminate benefits that Triple A has requested. Because the Court intends to impose a coercive sanction, the Court must, in selecting an appropriate amount, "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947).

The "result desired" is Olsen's participation in the § 922 proceeding. To date, Olsen has delayed because he continues to receive $1,160 in disability benefits every two weeks and therefore has no incentive to adjudicate the merits of Triple A's claim.[2] An effective method of eliminating the incentive for delay – and of creating an incentive for participation – would be to sanction Olsen by re-routing the payments issued by the Department of Labor from Olsen to this Court.[3]

Sanctioning Olsen by ordering the Department of Labor to direct Olsen's payment to the Court also reflects the character and magnitude of the harm threatened by continued

---

[1] The Court may impose a sanction without adhering to the protections afforded by Federal Rule of Criminal Procedure 42(a) because § 927(b) provides that punishment may be levied "in the same manner . . . as for a contempt committed before the court, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of or in the presence of the court." (Emphasis added). When contempt is committed in the presence of the court, then sanctions may be imposed pursuant to a summary disposition. See Fed. R. Crim. P. 42(b). The Court satisfied the procedural protections required by Rule 42's summary disposition provision by notifying Olsen of the possibility of sanctions, see United States v. Powers, 629 F.2d 619, 924 (9th Cir. 1980), and by issuing this order, which recites the relevant facts, see Fed. R. Crim. P. 42(b).

[2] According to a Benefit Payment Breakdown submitted by John Chamberlain, Chief, Branch of Financial Management, Insurance and Assessments, Department of Labor, Olsen currently receives disability payments at a rate of $580 per week. All parties represented at the hearing that Olsen receives the award in bi-weekly installments.

[3] Because the Court is imposing a coercive civil sanction, the fine must be made payable to the Court. See Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986).

contumacy. Without judging the merits of Triple A's termination claim, the obvious risk posed by Olsen's intentional delay is that Olsen will continue to receive disability benefits that may not be justified under the law. By precluding Olsen from receiving future payments, the harm threatened by continued stalling is thereby reduced.

Hence, the Court orders the Secretary of Labor to reassign disability checks made payable to Olsen pursuant to Office of Workers Compensation Programs claim number 13-056511 to the Court.[4] Checks shall made out to "Clerk, U.S. District Court" and mailed to:

>   Clerk, U.S. District Court
>   450 Golden Gate Avenue
>   16th Floor
>   San Francisco, CA 94102

The Court respectfully requests that Judge Mapes – or whichever ALJ is assigned to preside over the § 922 proceedings between Triple A and Olsen – inform this Court when he believes that Olsen is participating, in good faith, in the resolution of Triple A's claim. At that time, the Court will order the Department of Labor to recommence issuing checks in Olsen's name, provided that Olsen is still entitled to their receipt.

This order will take effect February 1, 2008.

**IT IS SO ORDERED.**

Dated: January 11, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[4] Although the LHWCA includes a provision exempting compensation payments due under the statute from "all claims of creditors and from levy . . . for recovery or collection of a debt," 33 U.S.C. § 916, the provision has no effect in this case because the court is not a "creditor" of Olsen. See E.P. Paup Co. v. Director, Office of Workers Compensation Programs, 999 F.2d 1341, 1351 (9th Cir. 1993).